[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in the above captioned case, Connecticut Resource Recovery Authority ("CRRA") has filed a complaint alleging that the defendant State Department of Environmental Protection ("DEP") violated the Administrative Procedure Act and the requirements of due process of law by failing to hold a hearing concerning CRRA's compliance with a consent order. While CRRA characterizes this case as an administrative appeal, the DEP asserts that the administrative action at issue was not final decision within the meaning of Connecticut General Statutes §4-166 (2) and (3) and that no appeal to the court is authorized.
History of the Proceedings
CRRA at all relevant times operated and continues to operate the Hartford landfill. Its permit to discharge leachate from the landfill into the ground water expired on October 31, 1988. CRRA applied for a new permit, and that application is still pending. CRRA and DEP entered into a consent order, signed on behalf of both parties in 1993, governing continued operation of the facility. That consent order was entered into for the purpose of defining CRRA's compliance with environmental laws and regulations; during the pendency of its application for renewal of its permit. The record does not indicate that the consent order was entered into to resolve any enforcement action then pending.
The consent order (Record Item 1) provides that CRRA shall continue to operate the site in compliance with the terms of the expired permit "until such time as the Commissioner renders a final decision on [CRRA's] application for reissuance of a leachate discharge permit." The consent order, at paragraph B.2, also provides that within 180 days of its signing CRRA was to
submit for the Commissioner's review and written CT Page 4083 approval a report which identifies the zone of influence of the leachate discharge from the Hartford Landfill. The report shall include, but is not limited to, a map delineating the extent of the zone of influences, a plan to either control the zone of influence by methods or mechanisms to be specified in the plan and approved in writing by the Commissioner, or a plan to abate any surface or ground water pollution emanating from the Hartford Landfill to the satisfaction of the Commissioner and a schedule for carrying out such plan. [emphasis supplied].
The consent order requires CRRA to perform the plan approved under the above paragraph in accordance with the approved schedule.
At paragraph 10, the consent order requires CRRA to use its best efforts to submit the required documents in a complete and approved form and states
 If the Commissioner notifies [CRRA] that any document or other action is deficient, and does not approve it with conditions or modifications, it is deemed disapproved, and [CRRA] shall correct the deficiencies and resubmit it within the time specified by the Commissioner, or, if no time is specified by the Commissioner, within thirty days of the Commissioner's notice of deficiencies. . .
At paragraph 13, the consent order provides as follows:
 This consent order is a final order of the Commissioner with respect to the matters addressed herein and is nonappealable and immediately enforceable. Failure to comply with this consent order may subject Respondent to an injunction and penalties under Chapters 439 and 445 or 446K of the Connecticut General Statutes.
By its terms, at paragraph 16, the Consent Order does not limit the power of the Commissioner to institute enforcement CT Page 4084 proceedings.
Pursuant to the consent order, CRRA filed a plan. The DEP notified CRRA by a letter dated September 20, 1994 that it found the plan to be insufficient and disapproved it because instead of providing definite dates as a schedule for carrying out a plan to control the leachate area, CRRA had indicated only that it would "perform the work concurrently with the development of the lined horizontal expansion of the landfill," a reference to CRRA's pending application for a discharge permit in connection with the addition of an ash disposal area on the site. The DEP noted that since "the timetable for the final decision [in the permit application for the ash disposal area] is not known, and no other schedule was submitted, Department staff have determined that the CRRA is in noncompliance with paragraph B.2 of the Consent Order." (Record, Item 5). The letter communicating the disapproval of the CRRA report imposed a thirty-day deadline for the CRRA to submit plans and schedules, including timetables. The letter included the statement that "[f]ailure to submit a [sic] timely and sufficient plans and schedules by this date may subject the Respondent to further enforcement action." (Record, Item 5, page 2).
On October 18, 1994, CRRA filed a document titled "Answer and Request for a Hearing" claiming that the DEP's disapproval of the report constituted a "new, nonconsensual order on which CRRA has a right to request a hearing."
The record reveals that CRRA did not provide a schedule including specific completion dates within the time indicated in the disapproval.
The DEP denied the request for a hearing stating that there was no provision for a hearing on the disapproval in either the consent order or the Connecticut General Statutes (Record, Add'l. Item 4).
CRRA has not claimed — and the record does not indicate — that the DEP has ever commenced enforcement proceedings based on noncompliance with the consent order nor that it has taken any action with regard to CRRA's operation under the expired permit pending consideration of the applicant for a new permit.
At oral argument, the parties advised the court that CRRA had submitted a new proposed schedule but that the DEP has not CT Page 4085 reviewed that new proposal. When asked whether the new proposal renders this appeal moot, the parties, by their counsel, both took the position that it does not, though CRRA contended, in a post-argument brief, that this case will become moot "as soon as DEP acts on the schedule submitted by CRRA." Since that event has not yet occurred, it does not appear that this case is now moot.
Issues
In its complaint, CRRA claimed that the failure of the DEP to provide a hearing in connection with its disapproval of the report filed pursuant to the consent order violated CRRA's rights under the UAPA. Additionally, it claimed the lack of a hearing constituted a violation of its right to due process of law. In its brief, the CRRA has confined its analysis to the former claim. In one sentence (Brief of CRRA, at page 23), it has asserted that "DEP's actions are violative of due process" but it has not briefed this as a separate claim. Such conclusory references to claims do not constitute discussion of a claim, and claims not briefed are deemed abandoned. Commissioner ofEnvironmental Protection v. Connecticut Building Wrecking Co.,227 Conn. 175, 181 n. 4 (1993); Cheshire Mortgage Service. Inc. v.Montes, 223 Conn. 80, 83 n. 4 (1992); Rodriguez v. Mallory BatteryCo., 188 Conn. 145, 149 (1982); Mazur v. Blum, 184 Conn. 116
(1981).
The DEP claims that its disapproval of a report required by a voluntary consent order is not subject to appeal. It takes the further position that even if that decision is found to be appealable, CRRA had no statutory right to a hearing.
The DEP moved to dismiss this case on the ground that the administrative decision at issue was not a final decision as to which any statutory right to appeal existed. The court, Maloney, J., denied the motion to dismiss, however, both parties have briefed the jurisdictional issue in connection with the merits as the issue of appealability is intertwined with the issue of whether a hearing was required. Neither party has taken the position that Judge Maloney's ruling establishes the law of the case as to whether a hearing was required.
General Statutes § 4-183 (a) provides for a right of appeal only to a party "who is aggrieved by a final decision" of an administrative agency. Pursuant to § 4-166 (3), "final decision" is defined for purposes of the UAPA as "the agency CT Page 4086 determination in a contested case." "Contested case" is defined in § 4-166 (2) as "a proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by the agency after an opportunity for a hearing or in which a hearing is in fact held . . ." The starting point of this court's analysis must therefore necessarily be whether any of the statutes invoked by CRRA entitled it to a hearing.
Standard of Review
In reviewing an appeal from the actions of an administrative agency, the trial court must determine whether "the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." Smith v. Zoning Board of Appeals, 227 Conn. 71, 80
(1993); Board of Education v. State Employees RetirementCommission, 210 Conn. 531 (1989).
With certain exceptions not claimed to be present here, the courts accord great deference to the construction given a statute by the agency charged with its enforcement. Connecticut Alcohol Drug Abuse Commission v. Freedom of Information Commission,233 Conn. 28, 39 (1995); City of Hartford v. Freedom of InformationCommission, 41 Conn. App. 67, 72-73 (1996).
Pursuant to General Statutes § 22a-208, the Commissioner of Environmental Protection is charged with enforcement of the waste management statutes and regulations invoked by CRRA.
Consent Order as Permit
CRRA characterizes the consent order as a permit to discharge leachate pursuant to General Statutes § 22a-430 (a) and claims that the decision at issue constitutes a "revocation, suspension, annulment or withdrawal" of a license pursuant to § 4-182 (c), which requires a hearing in connection with a "proceeding to revoke, suspend or modify a license."
The problem with this analysis is that the DEP has determined that the consent order was not a permit or a license to discharge leachate and was not the document under which CRRA was authorized to continue to discharge leachates from the Hartford landfill.
The DEP has correctly noted that the original discharge permit that bore an expiration date of 1988, not the consent order, was the permit under which CRRA was operating. General CT Page 4087 Statutes § 4-182 (b) provides that while a renewal application for a permit or license is pending, the existing license does not expire until the renewal application has been finally determined by the agency. That application was pending and its pendency was not affected by the consent order, in fact the consent order contains no indication that its terms in any way affect either the existing permit or the renewal application. Contrary to CRRA's claims, the consent order was not a discharge permit, and the actual permit under which CRRA was permitted to continue to discharge remained in effect by operation of §4-182(b).
The issue whether the consent order constitutes a permit is a legal determination as to which the DEP's conclusion is entitled to deference because it proceeds from the interpretation of a statute that the DEP is charged with enforcing.
Rejection of Compliance as Enforcement Action
The CRRA argued in a footnote at page 8 of its brief that the DEP's disapproval of its compliance with the consent order "also can be characterized as an enforcement action" under Connecticut General Statutes § 22a-6(e), and that both a right to a hearing and a right to appeal apply to enforcement actions. The flaw in this characterization is that the disapproval of the CRRA's submission was not "an order to enforce any statute, regulation, permit or order administered or issued by" the Commissioner within the meaning of § 22a-6(e). The letter by which the Commissioner disapproved CRRA's submission as not having provided a schedule for completion is not an order but an invocation of the agreement of the parties. In the Disapproval issued on September 20, 1994, the DEP did not make any order with regard to any permit or right of CRRA. It merely put CRRA on notice that it had not submitted what it had agreed to submit and that it had thirty days to do so. The DEP noted that noncompliance with the terms of the consent order "may subject the Respondent to further enforcement action" but the record does not indicate that any enforcement action in fact followed. The point of a consent order is to resolve a potential enforcement action by reaching an agreement. See General Statutes § 4-177
(d). As long as the agreement is complied with, the administrative agency does not institute an enforcement action. The situation entails two steps: a monitoring of compliance and, in the face of noncompliance, the initiation of an enforcement action. The record supports the DEP's position that only the CT Page 4088 former and not the latter step took place. CRRA has identified no statute or regulation that requires an agency to conduct a hearing to determine whether a party to a consent order has complied with the terms of that order. Only when a finding of noncompliance ripens to an initiation of an enforcement action against a party that has, by its noncompliance, signalled abandonment of its commitment to respond voluntarily, do the statutes relied on by CRRA entitle it to a hearing.
In a post-argument brief, moreover, CRRA conceded that the consent order was not part of and did not result from an actual or threatened enforcement action (Brief, 4/26/96, at page 1-2).
Applicability of Regulation § 22a-3a-5(d)(1)
CRRA claims that an alternative source of it claimed right to a hearing is State Regulation § 22a-3a-5 (d)(1). That regulation provides that the DEP shall give notice and an opportunity for a hearing to the holder of a license before revoking, suspending or modifying a license. As is explained above, this court finds that the DEP correctly ruled that the consent order was not a permit or license, so that the regulation is inapplicable.
Conclusion
The plaintiff has not established that the DEP acted illegally in denying it a hearing as to the issue of its failure to comply with the terms of the consent order to which it had agreed. The plaintiff has therefore failed to demonstrate its entitlement to prevail on the merits of its appeal.
To the extent that this determination is at variance with the decision of Judge Maloney in denying the motion to dismiss this action, this court is not bound by that decision, see State v.Almeda, 211 Conn. 441, 453 (1989); Breen v. Phelps, 186 Conn. 86
(1982); rather, this court concludes that since no hearing was either held or required, the matter of which the plaintiff complains was not a "final decision" within the meaning of General Statutes § 4-183 (a) because a "final decision" is one issued in a contested case, that is, pursuant to § 4-166
(2) and (3), one in which a party's rights, duties or privileges are required by statute to be determined by the agency after an opportunity for a hearing or in which a hearing is in fact held. CT Page 4089
In post-argument briefs, the parties have briefed claims concerning the legal effect of the consent order upon the eventual approval of a new permit. That issue is not before this court and no opinion is expressed as to that issue.
The appeal is dismissed.
Beverly J. Hodgson Judge of the Superior Court